1  Brian A. Sun (SBN 89410)
2  **NORTON ROSE FULBRIGHT US LLP**
   555 South Flower Street
3  Forty-First Floor
4  Los Angeles, California 90071
   Telephone: (213) 892-9200
5  brian.sun@nortonrosefulbright.com

6
   Attorneys for Defendants AT&T
7  Communications, LLC n/k/a AT&T Ventures,
   LLC, AT&T Services, Inc., AT&T Mobility
8  LLC, and Pacific Bell Telephone Company
9  d/b/a AT&T California

10
   *[Additional counsel listed on signature page]*
11

12         **IN THE UNITED STATES DISTRICT COURT**

13       **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14  SPADA INNOVATIONS, INC.,              | Case No.  2:24-CV-06703-MWF-
                                              MAR
15              Plaintiff,
                                              District Judge:
16         v.                                 Michael W. Fitzgerald

17  AT&T COMMUNICATIONS, LLC n/k/a          Magistrate Judge:
    AT&T VENTURES, LLC, AT&T                Margo A. Rocconi
18  SERVICES, INC., AT&T MOBILITY
    LLC and PACIFIC BELL TELEPHONE
19  COMPANY d/b/a AT&T CALIFORNIA,         **DEFENDANTS' NOTICE OF**
                                            **MOTION AND MOTION TO**
20              Defendants.                 **DISMISS PLAINTIFF'S**
                                            **AMENDED COMPLAINT**
21

22                                          Hearing:

23                                          Date:   December 16, 2024
                                            Time:  10:00am
24                                          Location: Courtroom 5A

25                                          (*Concurrently filed with [Proposed]*
26                                          *Order*)

27

28

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 16, 2024 at 10:00 a.m., or as soon thereafter as this matter may be heard, AT&T Communications, LLC n/k/a AT&T Ventures, LLC, AT&T Services, Inc., AT&T Mobility LLC, and Pacific Bell Telephone Company d/b/a AT&T California (collectively, "AT&T") will and hereby do move the Court to dismiss Plaintiff's Amended Complaint (ECF No. 16) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted for direct infringement, infringement under the doctrine of equivalents, and willful infringement.

This Motion will be heard in the Courtroom of Judge Michael W. Fitzgerald for the United States District Court in the Central District of California. The Court is located at 350 West First Street, Courtroom 5A, Los Angeles, California 90012.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities set forth below, the pleadings on file in this action, and such further evidence and argument as may be presented at or before the time this motion is taken under submission.

This Motion is made following multiple conferences of counsel pursuant to L.R. 7-3, which took place on October 10, 2024 and November 13, 2024. Plaintiff opposes the Motion.

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

DOCUMENT PREPARED
ON RECYCLED PAPER

Dated:  November 15, 2024

**NORTON ROSE FULBRIGHT US LLP**

By:  */s/ Brian A. Sun*

    BRIAN A. SUN
    Attorneys for Defendants AT&T
    Communications, LLC n/k/a AT&T
    Ventures, LLC, AT&T Services, Inc.,
    AT&T Mobility LLC, and Pacific Bell
    Telephone Company d/b/a AT&T
    California

Brett C. Govett (*Admitted Pro Hac Vice*)
Vlada A. Wendel (*Admitted Pro Hac Vice*)
**Norton Rose Fulbright US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
brett.govett@nortonrosefulbright.com
vlada.wendel@nortonrosefulbright.com

Daniel S. Leventhal (*Admitted Pro Hac Vice*)
**Norton Rose Fulbright US LLP**
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
daniel.leventhal@nortonrosefulbright.com

Talbot R. Hansum (*Admitted Pro Hac Vice*)
Gabriel S. Culver (*Admitted Pro Hac Vice*)
**Norton Rose Fulbright US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
talbot.hansum@nortonrosefulbright.com
gabriel.culver@nortonrosefulbright.com

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

# **TABLE OF CONTENTS**

I.      Introduction ....................................................................................... 9

II.     Legal Standard ................................................................................ 10

        A.      Pleading Patent Infringement .................................................. 10

        B.      Pleading Infringement By Practicing A Standard .................... 11

III.    Background ...................................................................................... 11

        A.      Passive Optical Networks And The Asserted Patents .............. 11

        B.      The Asserted Claims And The FAC's Deficient
                Infringement Allegations ........................................................ 14

IV.     Argument ......................................................................................... 16

        A.      The FAC Fails To State A Claim Of Direct Infringement ........ 16

        B.      The FAC Also Fails To State A Claim For Infringement
                Under The Doctrine Of Equivalents ......................................... 25

        C.      The FAC Fails To State A Claim For Willful
                Infringement ........................................................................... 26

V.      Conclusion ...................................................................................... 30

DOCUMENT PREPARED
ON RECYCLED PAPER

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*AlexSam, Inc. v. Aetna, Inc.,*
   119 F.4th 27 (Fed. Cir. 2024) ............................................................... 12

*Anza Tech., Inc. v. Novatel Wireless, Inc.,*
   No. 3:16-cv-00585-BEN-AGS, 2016 WL 7555397 (S.D. Cal. Nov. 4, 2016) ............................................................................................... 25

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................... 10, 18, 24

*Audio MPEG, Inc. HP Inc. v. Società Italiana Per Lo Sviluppo Dell' Elettronica Spa,*
   No. 2:15-cv-73, 2016 WL 7010947 (E.D. Va. July 1, 2016) ............................ 11

*Bayer Healthcare LLC v. Baxalta Inc.,*
   989 F.3d 964 (Fed. Cir. 2021) ............................................................... 27

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................... 10

*Bot M8 LLC v. Sony Corp. of Am.,*
   4 F.4th 1342 (Fed. Cir. 2021) ......................................................... 11, 20

*CyboEnergy, Inc. v. N. Elec. Power Tech., Inc.,*
   721 F. Supp. 3d 1050 (N.D. Cal. 2024) ........................................ 9, 18, 22

*Document Sec. Sys., Inc. v. Lite-On, Inc.,*
   No. CV 17-06050 JVS, 2018 WL 2422589 (C.D. Cal. Feb. 5, 2018) .............. 29

*E-Vision Optics, LLC v. Luxottica Grp. S.p.A.,*
   No. SA CV 23-02013-AB, 2024 WL 1601853 (C.D. Cal. Mar. 8, 2024) .................................................................................. 26, 28, 29

*Eagle Pharm. Inc. v. Slayback Pharma LLC,*
   958 F.3d 1171 (Fed. Cir. 2020) ............................................................. 26

*Eclectic Properties E., LLC v. Marcus & Millichap Co.,*
   751 F.3d 990 (9th Cir. 2014) ................................................................ 10

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED ON RECYCLED PAPER

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

*Entropic Commc'ns, LLC v. Comcast Corp.*,
    702 F. Supp. 3d 954 (C.D. Cal. 2023)..........................................................28, 29

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010).....................................11, 17, 19, 20, 21, 22, 28

*Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*,
    967 F.3d 1380 (Fed. Cir. 2020).................................................................22

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001)...................................................................12

*MasterObjects, Inc. v. Amazon.com, Inc.*,
    No. C 20-08103 WHA, 2021 WL 4685306 ......................................................27

*N. Star Innovations, Inc. v. Etron Tech. Am. Inc.*,
    No. 16-cv-00599, 2016 WL 9046909 (C.D. Cal. Sept. 21, 2016) .....................24

*N. Star Innovations Inc. v. Kingston Tech. Co., Inc.*,
    No. SA CV 17-01833-DOC (DFMx), 2018 WL 3155258 (C.D. Cal.
    May 7, 2018), *report and recommendation adopted,* No. SA CV
    17-01833-DOC (DFM), 2018 WL 3155708 (C.D. Cal. June 25,
    2018)........................................................................................................10

*Novitaz, Inc. v. inMarket Media, LLC*,
    2017 WL 2311407 (N.D. Cal. May 26, 2017) ..............................................10

*On Track Innovations Ltd. v. T-Mobile USA, Inc.*,
    106 F. Supp. 3d 369 (S.D.N.Y. 2015)..................................................11, 17, 18

*Peters v. Active Mfg. Co.*,
    129 U.S. 530 (1889) ..............................................................................19

*Provisur Techs., Inc. v. Weber, Inc.*,
    No. 2023-1438, 2024 WL 4363502 (Fed. Cir. Oct. 2, 2024)............................27

*Ravgen, Inc. v. Quest Diagnostics Inc.*,
    No. 2:21-CV-09011 RGK (GJS), 2022 WL 2047613 (C.D. Cal. Jan.
    18, 2022)..................................................................................................29

*Sleep No. Corp. v. Sizewise Rentals, LLC*,
    No. ED CV 18-00356-AB, 2018 WL 5263065 (C.D. Cal. June 26,
    2018)........................................................................................................24

DOCUMENT PREPARED
ON RECYCLED PAPER

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

*Solar Sun Rings, Inc. v. Wal-Mart Stores, Inc.*,
    No. CV 11-6990 PSG ..................................................................................... 19

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ........................................................................ 10

*Sonos, Inc. v. Google LLC*,
    591 F. Supp. 3d 638 (N.D. Cal. 2022) ......................................................... 27

*Stragent, LLC v. BMW of North America, LLC*,
    No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar.
    3, 2017) .......................................................................................................... 11

*Teradyne, Inc. v. Astronics Test Sys., Inc.*,
    No. CV 20-2713-GW-SHKx, 2020 WL 13593156 (C.D. Cal. Aug.
    7, 2020) ............................................................................................... 18, 24, 25

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012) .................................................................... 26

*Universal Elecs. Inc. v. Roku, Inc.*,
    No. SA CV 18-1580 JVS, 2019 WL 1877616 (C.D. Cal. Mar. 5,
    2019) ............................................................................................................... 29

*Vaporstream, Inc. v. Snap Inc.*,
    No. 2:17-CV-00220-MLH-KSX, 2020 WL 136591 (C.D. Cal. Jan.
    13, 2020) ........................................................................................................ 29

*Vytacero Bio, LLC v. CytomX Therapeutics, Inc.*,
    No. 20-333-GBW-CJB, 2023 WL 7125196 (D. Del. Oct. 30, 2023) ............... 26

*Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.*,
    520 U.S. 17 (1997) ........................................................................................ 26

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016) .................................................................... 27

**Rules and Statutes**

FED. R. CIV. P. 8(a)(2) ........................................................................... 9, 10, 18

FED. R. CIV. P. 12(b)(6) ............................................................................ 2, 10, 11

DOCUMENT PREPARED
ON RECYCLED PAPER

7

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

1

L.R. 7-3 ...................................................................................................................... 2

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff SPADA Innovations, Inc. ("SPADA") fails to state a claim for direct infringement, infringement under the doctrine of equivalents ("DoE"), or willful infringement, because the First Amended Complaint ("FAC," ECF No. 16) fails to plead sufficient facts "showing that the pleader is entitled to relief" in multiple aspects.  *See* FED. R. CIV. P. 8(a)(2).  ***First,*** the FAC fails to plausibly allege infringement because the Asserted Claims[1] each require "data streams" formatted in a particular way and the FAC does not identify any device or source of those "data streams" to support a conclusion that they exist in AT&T's network.  For method claims, like those asserted here, "the complaint must allege that the accused party 'practiced all steps of the claimed method.'"  *See CyboEnergy, Inc. v. N. Elec. Power Tech., Inc.*, 721 F. Supp. 3d 1050, 1053 and 1055 (N.D. Cal. 2024) (citations omitted) (dismissing complaint where Plaintiff failed to identify claimed components recited in a method claim, such as "DC power sources" and a "power grid").

***Second,*** the FAC fails to plausibly allege infringement because it relies on third-party technical documents called RFCs to allege that AT&T's Optical Line Terminals (OLTs) receive the specifically-formatted "data stream" described in the first "receiving" step of each Asserted Claim.  The FAC draws no connection between these RFCs and AT&T's network or the Asserted Claims.  Without plausibly alleging that AT&T's network operates in the manner described by these RFCs, ***or*** that such operation would necessarily constitute infringement of the Asserted Claims, these allegations do not meet the Federal Circuit's requirements for pleading patent infringement through compliance with these purported standards.

---

[1] The FAC accuses AT&T of infringing three claims from two patents—Claim 4 of U.S. Patent No. 11,070,898 ("the '898 Patent") and Claims 5 and 8 of U.S. Patent No. 11,589,142 (the "'142 Patent") (collectively, "the Asserted Claims" and "the Asserted Patents").

DOCUMENT PREPARED
ON RECYCLED PAPER

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Finally, the FAC's allegations of infringement under the doctrine of equivalents and willful infringement fail as a matter of law. The FAC's conclusory and improper allegations fail to state a claim for relief and should be dismissed.

## II.    LEGAL STANDARD

### A.    Pleading Patent Infringement

Rule 8 requires "showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must disregard allegations that are legal conclusions, even when disguised as facts. *See id*. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). "[P]laintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Id*. at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

In patent cases, "a complaint does not satisfy the standards of *Twombly* and *Iqbal* where it does not at least contain factual allegations that the accused product practices every element of at least one exemplary claim." *Novitaz, Inc. v. inMarket Media, LLC*, 2017 WL 2311407, at *3 (N.D. Cal. May 26, 2017). The complaint needs to allege "what the accused product contains to meet the[] claim limitations . . . and that helps the Court understand why it is plausible that this is so. . . . There needs to be some facts alleged that articulate why it is plausible that the other party's product infringes that patent claim—not just the patentee asserting, in a conclusory fashion, that it is so." *N. Star Innovations Inc. v. Kingston Tech. Co.*,

DOCUMENT PREPARED
ON RECYCLED PAPER

10

1  *Inc.*, No. SA CV 17-01833-DOC (DFMx), 2018 WL 3155258, at *3 (C.D. Cal. May

2  7, 2018), R. & R. adopted, No. SA CV 17-01833-DOC (DFM), 2018 WL 3155708

3  (C.D. Cal. June 25, 2018).   A plaintiff also "cannot assert a plausible claim for

4  infringement under the *Iqbal*/*Twombly* standard by reciting the claim elements and

5  merely concluding that the accused product has those elements.  There must be some

6  factual allegations that, when taken as true, articulate why it is plausible that the

7  accused product infringes the patent claim."  *Bot M8 LLC v. Sony Corp. of Am.*, 4

8  F.4th 1342, 1353 (Fed. Cir. 2021).

9       **B.**    **Pleading Infringement By Practicing A Standard**

10         To demonstrate infringement, a plaintiff may compare the Asserted Claims to

11  an industry standard, but only:  (a) "if [the] accused product operates in accordance

12  with [the] standard," and (b) "practicing that standard would always result in

13  infringement."  *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010).

14  That is, a plaintiff may "rely on industry standards to demonstrate infringement so

15  long as the devices actually practice . . . those standards."  *On Track Innovations Ltd.*

16  *v. T-Mobile USA, Inc.*, 106 F. Supp. 3d 369, 378 (S.D.N.Y. 2015) (citing *Fujitsu*, 620

17  F.3d at 1327).   While *Fujitsu* involved a motion for summary judgment, its

18  substantive law is applicable to the Rule 12(b)(6) context, since "[t]he elements of

19  direct infringement are the same whether evaluated in the context of a motion for

20  summary judgment under Rule 56 or a motion to dismiss under Rule 12(b)(6)."

21  *Stragent, LLC v. BMW of North America, LLC*, No. 6:16-cv-446-RWS-KNM, 2017

22  WL 2821697, at *4 (E.D. Tex. Mar. 3, 2017) (applying the law from *Fujitsu* to a

23  motion to dismiss); *Audio MPEG, Inc. HP Inc. v. Società Italiana Per Lo Sviluppo*

24  *Dell' Elettronica Spa*, No. 2:15-cv-73, 2016 WL 7010947, at *8 (E.D. Va. July 1,

25  2016) (same).

26  **III.**   **BACKGROUND**

27       **A.**    **Passive Optical Networks And The Asserted Patents**

28        Passive Optical Networks ("PON") standards predate the earliest priority date

DOCUMENT PREPARED
ON RECYCLED PAPER

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

of the Asserted Patents by over a decade.  *See*, *e.g.*, Ex. 1 (ITU-T G.984.1 (2003)), 1
(containing the initial release of the GPON standard from March 2003).[2]  The FAC
asserts that AT&T's PON services "utilize PON technology, including but not
limited to" two PON standards: "GPON (Gigabit PON) and XGS-PON (10 Gigabit
Symmetrical PON)."  FAC, ¶ 10.  ITU-T G.984.1, the GPON standard, illustrates the
major components and typical arrangement of components in a PON.



**Figure I.1 – Generic GPON system**

Ex. 2 (ITU-T G.984.1), 14.  As shown, a generic PON typically includes "an optical
line termination (OLT) system and an optical network unit (ONU) or optical network
termination (ONT) with a passive optical distribution network (ODN)," which is "a
tree of optical fibres," "interconnecting them."  *Id.*, 1–2.  The ODN is "supplemented
with power or wavelength splitters."  *Id.*, 2.

  The Asserted Patents do not purport to have invented PONs.  *See*, *e.g.*, '898

---

[2]All exhibits are exhibits to the Declaration of Talbot R. Hansum.  Each exhibit is an
excerpt of a document relied upon by the FAC or referenced in a document relied on
in the FAC.  The Court may consider these documents even though they are not
attached to the FAC.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.
2001) ("If the documents are not physically attached to the complaint, they may be
considered if the documents' 'authenticity . . . is not contested' and 'the plaintiff's
complaint necessarily relies' on them."); *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27,
36 (Fed. Cir. 2024) (At the 12(b)(6) stage, holding that the Court may consider
"documents in plaintiff's possession on which it relies in stating its claims or which
it incorporates in the complaint.").

Patent, 1:26–27 ("Nowadays a wide variety of entities are moving towards the use of Passive Optical Networks").  Rather, the Asserted Patents disclose deploying a PON *inside* a "multi-tenant site." *Id.*, 3:58–67, 4:30–40.  After signals arrive at the "multi-tenant site" using non-PON technologies, they pass through a "premise router 140," then to an OLT, then, within the building, over an optical network to each ONU "serving a tenant." *Id.*, 4:41–5:41.  Within this architecture, the Asserted Patents describe adding "Virtual Routing and Forwarding (VRF)" functionality to this "premise router" and the OLT distributing signals so encoded. *Id.*, 4:48–5:11.

Neither the GPON nor the XGS-PON standards mentioned in Paragraph 10 of the FAC reference a "premise router," nor do they mention the specific term "PON interface router" that is used in some Asserted Claims. *Compare* '898 Patent, 2:36-37 and Cl. 4 *to* Ex. 2 (ITU-T G.984.1), 2–3 ("Terms defined in this Recommendation") *and* Ex. 3 (ITU-T G.9807.1), 4–10 ("Definitions").  Nor do the GPON and XGS-PON standards mention "Virtual Routing and Forwarding (VRF)" functionality for any such device. *See generally id*.  The GPON and XGS-PON standards generally describes deploying a PON to deliver signals to a building.  For example, the GPON standard describes the "fibre to the building" ("FTTB") arrangement for delivering service to a "multi-dwelling unit."  Ex. 2 (ITU-T G.984.1), 4; *see also* Ex. 3 (ITU-T G.9807.1), 13, 25–26.  In the arrangement described in the standards, the optical network between the OLT and ONU operates exclusively *outside* the "multi-dwelling unit," relying on non-optical technologies within the building—the *opposite* of the Asserted Patents. *Id.*

13

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**



'898 Patent, Figure 1                    Ex. 2 (ITU-T G.984.1), 4 (Figure 1)

**B.    The Asserted Claims And The FAC's Deficient Infringement Allegations**

Each Asserted Claim recites aspects of the arrangement discussed above—but the FAC fails to provide any plausible basis to conclude these elements are met by AT&T's PON services.

***First***, each Asserted Claim recites "receiv[ing]" at a PON OLT "at least one private data stream out of a plurality of data streams, wherein said at least one private data stream is virtually separated using Virtual Routing and Forwarding (VRF) to form at least one virtually separated private data stream comprised of [Multi-Protocol Label Switching (MPLS) data packages that have been uniquely labelled using MPLS for further identification as MPLS labelled data packages] / [Internet Protocol (IP) data packages], and wherein said at least one virtually separated private data stream including said [MPLS labelled data packages] / [IP data packages] is intended for at least one of a plurality of ONUs."  '898 Patent, Cl. 4; '142 Patent, Cls. 5 *and* 8.  However, the FAC fails to plead any plausible basis to conclude an OLT in AT&T's PON receives a "data stream" with these specific properties.  *See* FAC, ¶¶ 16–17.

Further, Claim 4 of the '898 Patent and Claim 5 of the '142 Patent each recite receiving "data streams" from "at least one ***passive optical network (PON) interface router***."  However, the FAC does not identify any equipment in AT&T's network

DOCUMENT PREPARED
ON RECYCLED PAPER

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

that corresponds to a PON interface router.  *See* FAC, ¶¶ 16, 27, 49, and 52.  Nor does the FAC explain what a PON interface router is or how AT&T might identify what components in AT&T's networks or services meet the FAC's purported mapping.  *See id.*  Further, while the FAC generally asserts that the accused AT&T servers "utilize" the GPON and XGS-PON standards (*id.*, ¶ 10), the FAC does not assert that the PON interface router corresponds to any component defined by those standards (*id.* ¶¶ 16, 27, 49, and 52).

Once again, while the FAC generally asserts that the accused AT&T services "utilize" the GPON and XGS-PON standards (*id.*, ¶ 10), the FAC does not assert that practicing the GPON or XGS-PON standards would result in meeting the "receiving" limitation (*id.* ¶¶ 16–17).  Instead, the FAC references and quotes from a series of technical documents—RFC 4364 (Ex. 4), RFC 4381 (Ex. 5), and RFC 4382 (Ex. 6). *Id.*, ¶ 17.  But, unlike GPON and XGS-PON, which the FAC asserts AT&T utilizes, the FAC ***never asserts, let alone offers a plausible basis to conclude, that any portion of the AT&T network practices any of the cited material, including:***

- "These virtually separated private data streams are comprised of pre-appended anti-spoofing MPLS labels per the RFC 4381 Standard's Section 3.4, titled Label Spoofing."
- "VRF is used to generate virtually separate private data streams in accordance with the RFC 4364 Standard and its supporting RFC 4381 Standard and RFC 4382 Standard."
- "A VRF includes the addresses of that VPN as well as the addresses of the PE routers with which the CE routers are peering."

*Id.*, ¶ 17.  Further, the FAC offers no explanation how the quoted portions of these documents are relevant to the claims—or even how they describe any functionality that could be performed by a hypothetical system.  *See id.*  While the FAC purports to describe functionality "per the RFC 4381 Standard's Section 3.4, titled Label Spoofing," RFC 4381 is not a standard, and Section 3.4 contains no description of

DOCUMENT PREPARED
ON RECYCLED PAPER

any functionality.  Ex. 5 (RFC 4381).  Rather, RFC 4381 is titled an "Analysis" and described as a "memo" that "provides information for the Internet community" and "***does not specify an Internet standard of any kind***."  *Id.*, 1.  Section 3.4 describes a class of attacks known as "label spoofing," not any functionality performed in compliance with any standard.  *Id.*, 11–12.  Similarly, the other RFCs that the FAC relies on—RFC 4364 and 4382 (*see, e.g.*, FAC, ¶ 17)—are only "Proposed Standards," not final ones.  *See* Ex. 4 (RFC 4364) at 1 *and* Ex. 6 (RFC 4382) at 1 (each identifying "STD 1" for the current "standardization state and status of th[ese] protocol[s]."); *and* Ex. 7 (STD 1) at 11 *and* 26 (listing RFC 4364 and RFC 4382 as "Proposed Standards.").  Further, these RFCs state that they "specif[y] an Internet ***standards track*** protocol for the Internet community, ***and requests discussion and suggestions for improvements***."  Ex. 4 (RFC 4364) at 1, and Ex. 6 (RFC 4382) at 1. They are not identified as adopted standards.

Beyond these unexplained references to third-party technical documents unlinked to any accused AT&T services, the FAC does nothing more than parrot the claim language: "The OLTs used by at least one Defendant, for its subscribers or for the subscribers of another Defendant, receive from their associated PON interface routers virtually separated private IP data streams to deliver various services intended for specific subscribers."  FAC, ¶ 16.  Nowhere does the FAC provide any citation to documentation, factual assertions, or explanation to plausibly conclude that this conclusory allegation is true.  *Id.*

## IV.  <u>ARGUMENT</u>

### A.    The FAC Fails To State A Claim Of Direct Infringement

Each of the three Asserted Claims requires an OLT in AT&T's PON receiving "data streams" formatted in a particular way, but the FAC provides no plausible basis to conclude that AT&T's OLTs receive any such data streams.  FAC, ¶¶ 16–17, 27–28, 38.  Without identifying the source of these "data streams," the FAC cannot plausibly plead that the claimed "data streams" are received by any OLT.  The FAC

1   fails this basic hurdle.  Further, even if the FAC had identified any such device or

2   source, it fails to provide any plausible basis to conclude that some other portion of

3   a network formats "data streams" in the recited manner before they are received by

4   an OLT.  *Id.*  Rather, the FAC parrots the claim language and provides a string of

5   unexplained citations to purported standard documents that fall well short of setting

6   forth any plausible basis for multiple reasons.

7       First, the FAC provides no plausible basis for concluding any functionality

8   described in the RFCs that the FAC relies on is performed by any component or

9   device in AT&T's network.  Second, the FAC fails to plead infringement relying on

10  purported "standards" where (a) the FAC fails to allege the RFCs are mandatory

11  standards and thus cannot rely on the RFCs to plausibly support a conclusion that

12  AT&T necessarily infringes and (b) the FAC does not explain how the mismatched

13  language from the RFCs meets the claims.  Third, for almost every claim element,

14  the FAC parrots and then characterizes the claim language without explaining how

15  each element is met.

16      **1.  The FAC's Citation To Third-Party Technical Documents**

17      **Cannot Plausibly State A Claim for Infringement Because The**

18      **FAC Does Not Link The Cited Functionality To An Actual**

19      **Device To Plausibly Plead That AT&T's PON Performs The**

20      **Cited Functionality**

21      Beyond parroting the claim language (which is insufficient as discussed

22  below), the FAC assumes that "data streams" formatted as required by the Asserted

23  Claims exist by referencing functionality described in a series of third-party technical

24  documents known as "RFCs" that the FAC alleges are "standards."  FAC, ¶¶ 16–17,

25  27–28, 38.  Under *Fujitsu*, for such citations to technical documents to be sufficient,

26  the FAC must first plausibly plead that the "devices actually practice . . . those

27  standards."  *On Track Innovations*, 106 F. Supp. 3d at 378 (citing *Fujitsu*, 620 F.3d

28  at 1327).  But the FAC fails to identify any devices or equipment in AT&T's network

that allegedly perform any functionality in the cited RFCs.  FAC, ¶¶ 16–17, 27–28, 38.  Nor does the FAC offer any explanation of why it should be assumed that some unnamed device performs any of the cited functionality.  *Id.*  If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not ***show[n]*** . . . the pleader is entitled to relief." *Teradyne, Inc. v. Astronics Test Sys., Inc.*, No. CV 20-2713-GW-SHKx, 2020 WL 13593156, at *2 (C.D. Cal. Aug. 7, 2020) (quoting *Iqbal*, 556 U.S. at 679) (emphasis added); *see also* FED. R. CIV. P. 8(a)(2).[3]

Paragraph 17 demonstrates the insufficient nature of the FAC's allegations.  It begins by summarily stating that AT&T practices the claim limitation, "said at least one private data stream is virtually separated using Virtual Routing and Forwarding (VRF) to form at least one virtually separated private data stream comprised of Multi-Protocol Label Switching (MPLS) data packages that have been uniquely labelled using MPLS for further identification as MPLS labelled data packages[.]"  *See* FAC, ¶ 17 (quoting '898 Patent, at Cl. 4).  But merely quoting claim language and stating that defendant infringes without supporting factual allegations is not enough, as discussed in Section IV.A.3, below.  The next sentence states that "private data streams received by the OLTs used by [AT&T], have been virtually separated using

---

[3] In addition to rendering its allegations as to the "receiving" step implausible, the FAC's failure to identify any actual equipment results in a second failure in mapping Claim 4 from the '898 Patent and Claim 5 from the '142 Patent, which require that a "PON interface router" generate the formatted data streams.  *See CyboEnergy, Inc. v. N. Elec. Power Tech., Inc.*, 721 F. Supp. 3d 1050, 1053 (N.D. Cal. 2024) (dismissing a complaint asserting method claims because Plaintiff failed to allege that Defendant makes, uses, offers to sell, or sells certain physical components recited in the method steps of the asserted claims).  The FAC does not allege that a PON interface router is a known class of components from which AT&T could determine what is accused, nor is it.  *See* FAC, ¶¶ 16–17.  Nor does the FAC explain what a PON Interface Router is, what component or aspect of AT&T's optical networks supposedly constitutes a "PON interface router," or how AT&T might identify what components in AT&T's networks or services the FAC contends are a "PON interface router."  *See id.*

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

DOCUMENT PREPARED
ON RECYCLED PAPER

VRF" and the following sentences simply describe what VRF is and identify some documents associated with VRF. FAC, ¶ 17. But having provided no explanation of *what* in AT&T's network allegedly performs the described functionality or any plausible explanation of *why* any such unnamed component includes such functionality, the FAC falls well short of the requirements in *Fujitsu* standard. *See Fujitsu*, 620 F.3d at 1327–28.

The FAC does not cite to publicly available sources to show that any component in AT&T's network uses VRF to separate data streams. FAC, ¶ 17. The FAC does not allege any facts tying what AT&T does in its PON-based network to any purported use of VRF. *Id.* For instance, the FAC does not allege that *all* networks use VRF to separate data streams and therefore AT&T must infringe. *Id.* Nor could the FAC have done so. Each of the RFCs cited in Paragraph 17 are dated February 2006—6 years before the Asserted Patents were filed. *See* Ex. 4 (RFC 4364) at 1; Ex. 5 (RFC 4381) at 1; *and* Ex. 6 (RFC 4382) at 1. If the mere existence of those RFCs were sufficient to plausibly plead infringement, then they equally demonstrate that the Asserted Claims are invalid because "[t]hat which infringes, if later, would anticipate, if earlier." *See Solar Sun Rings, Inc. v. Wal-Mart Stores, Inc.*, No. CV 11-6990 PSG JEMx, 2012 WL 5379144, at *6 (C.D. Cal. Oct. 31, 2012) (quoting *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889)) (citations omitted).

Beyond its citations to the RFCs, the FAC also states that AT&T's "services utilize PON technology, including but not limited to GPON (Gigabit PON) and XGS-PON (10 Gigabit Symmetrical PON) technologies." FAC, ¶ 10. But having made that assertion, the FAC never mentions either standard again, and does not allege that AT&T infringes through its use or compliance with those standards. *See*, *e.g.*, FAC, ¶¶ 16-17. Having not asserted that "practicing that standard would always result in infringement," *Fujitsu*, 620 F.3d at 1327–28, the FAC's reference to these standards is insufficient to state a claim for direct infringement.

In sum, SPADA "cannot assert a plausible claim for infringement under the

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

DOCUMENT PREPARED ON RECYCLED PAPER

*Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements.  There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).

> **2.  The FAC Fails To Plausibly Allege That The Optical Line Terminals In AT&T's PON Receive The Specifically-Formatted "Data Streams" Required By The Asserted Claims**

Even if the FAC had plausibly pled that some component in the AT&T network complies with the referenced passages of the RFCs, the FAC still fails because the FAC does not demonstrate that "practicing [the referenced passages] would always result in infringement," *Fujitsu*, 620 F.3d at 1327–28.  Rather, the cited RFCs are a grab bag of descriptions that, in many instances, do not describe required functionality and are not linked to the claim limitations or AT&T's PON.

> **a.  The FAC Fails to Plausibly Allege That The RFCs Are Standards Or Define Mandatory Requirements That Necessarily Infringe**

In an apparent attempt to tie the practice of VRF and the specifically formatted "data streams" to the Asserted Claim language, the FAC alleges that "VRF is used to generate virtually separate private data streams in accordance with the RFC 4364 Standard and its supporting RFC 4381 Standard and RFC 4382 Standard."  The FAC fails to plausibly allege that these RFCs define standardized functionality.  In fact, the first paragraph of RFC 4381 explicitly states—contrary to the FAC's allegations—that it is not a standard.  Ex. 5 (RFC 4381) ("It ***does not specify an Internet standard of any kind***.") (emphasis added).  The FAC's reliance on RFC 4381, including, for example, Paragraph 17, lines 14-16, that "These virtually separated private data streams are comprised of pre-appended anti-spoofing MPLS labels per the RFC 4381 Standard's Section 3.4, titled Label Spoofing" provides no

DOCUMENT PREPARED ON RECYCLED PAPER

basis to conclude that any network, including AT&T's PON, operates in accordance with this unstandardized RFC.  *See* FAC, ¶ 17.

Moreover, the cited portion of RFC 4381, Section 3.4, says nothing about how a system ***must*** behave to comply with any standard and instead recites possible implementations related to a "theoretical" network.  *See, e.g.*, RFC 4381, § 3.4 (" . . . where an attacker fakes the source IP address of a packet, it is also ***theoretically possible*** to spoof the label of an MPLS packet. . . .  Thus ***in this section the emphasis is on whether it is possible*** to insert packets with spoofed labels into the MPLS network. . . .").  Because this section on its face relates to a theoretical system, the FAC's allegation in the next sentence of Paragraph 17, at lines 16 through 18, stating that some hypothetical "CE router and all other devices . . . received and pass IP packets" also fails to explain how AT&T infringes or provide any basis for the conclusion that RFC 4381 provides evidence that AT&T practices the patent claim.  FAC, ¶ 17.

Even if RFC 4381 were an adopted standard, in circumstances where the relevant section of the standard is optional, rather than required to practice the standard—similar to the theoretical network in RFC 4381—a patentee ***cannot rely on that section*** to demonstrate infringement, as a matter of law.  *See Fujitsu*, 620 F.3d at 1327–28 (where "the relevant section of the standard is optional, and standards compliance alone would not establish that the accused infringer chooses to implement the optional section [], it is not sufficient for the patent owner to establish infringement by arguing that the product admittedly practices the standard, therefore it infringes.").

The remaining RFCs that the FAC relies on—RFCs 4364 and 4382—are merely "Proposed Standards."  Other than calling them "standards," the FAC has not adequately alleged that the RFCs define mandatory functionality that is required to

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

DOCUMENT PREPARED
ON RECYCLED PAPER

comply with any adopted standard.[4]  "*Fujitsu* teaches that where, but only where, a patent covers mandatory aspects of a standard, is it enough to prove infringement by showing standard compliance.  *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 967 F.3d 1380, 1384 (Fed. Cir. 2020).  And the FAC does not allege that the these "Proposed Standards" define mandatory aspects of a standard.

Because the FAC fails to establish that the cited RFCs define mandatory functionality, the RFCs "do[] not provide the level of specificity required to establish that practicing that standard would always result in infringement" (*Fujitsu*, 620 F.3d at 1327), and it is not plausible to conclude that AT&T infringes based on the cited RFCs.[5]

### b.    The Cited RFCs Do Not Match The Claim Language, Nor Does the FAC Provide Any Explanation Linking Them To The Claims

The FAC also fails because it does not tie the quoted language from the cited RFCs to the language of the Asserted Claims.  For instance, the FAC alleges at lines 17-20 that "VRF is used to generate virtually separate private data streams in accordance with the RFC 4364 Standard and its supporting RFC 4381 Standard and RFC 4382 Standard."  *Id*.  None of these RFC documents make any reference to PONs or optical networks.  *See* Ex. 4 (RFC 4364), Ex. 5 (RFC 4381), *and* Ex. 6 (RFC 4382).  The FAC fails to provide any basis to conclude that the claims are practiced

---

[4] The first paragraph of both RFCs points to the "current edition of the 'Internet Official Protocol Standards' (STD 1)" to identify the current "standardization state and status of th[ese] protocol[s]."  *Id*.  That document—STD 1—lists RFC 4364 and RFC 4382 as "Proposed Standards."  *See* Ex. 7 (STD 1) at 11 *and* 26.  Both of these RFCs also state in the first paragraph that they "specif[y] an Internet **standards track** protocol for the Internet community, ***and requests discussion and suggestions for improvements***."  Ex. 4 (RFC 4364) at 1, and Ex. 6 (RFC 4382) at 1.

[5] Even if the RFCs were standards, the FAC cannot allege based solely on the RFCs' existence that it is plausible that AT&T's PON operates in accordance with the RFCs without showing more, as explained above in Section IV.A.1.

DOCUMENT PREPARED
ON RECYCLED PAPER

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

through compliance with the RFCs or that AT&T's PON would operate the same as a hypothetical optical network built around these RFC documents that are **not** tied to optical networks or PONs.

Further, the last three sentences of Paragraph 17 fail to track the claim language that the FAC accuses AT&T of practicing. The FAC does not explain what a "Provider Edge (PE) router" is. *See* FAC, ¶¶ 17, 28. The FAC does not explain what "maintain[ing] a separate VRF instance" entails. *See id.* Twice, the FAC uses the phrase "a VRF," but VRF is a process, so "a VRF" makes no sense. *See id.* For instance, AT&T is unsure if the FAC is trying to say "A network using VRF," "one instance in which VRF is being used" or something else. The FAC does not explain what is meant by "the addresses of the PE routers with which the CE routers are peering." *See id.* The FAC also does not explain what is meant by "PE addresses [that] belong logically to the VPN." *See id.* None of these terms appear in the claims nor does the FAC explain how these characterizations of VRF show that AT&T plausibly practices the claims.[6]

### 3. Beyond Inadequate Citations To Technical Documents, The FAC Repeats The Claim Language Without Any Explanation Of Why That Language Is Met

Other of the FAC's claim element-by-element allegations fail because they

---

[6] The arguments in this Section IV.A.2 apply equally to the FAC's allegations related to Claims 5 and 8 of the '142 Patent. In Paragraph 28, related to Claim 5 of the '142 patent, the FAC quotes again from RFC 4381. *See* FAC, ¶ 28. However, the quote that the FAC uses is written in permissive language—"BGP/MPLS *allows* distinct IP VPNs to use the same address space." *Id.* citing RFC 4381 at § 3.1. Nothing in this section *requires* that MPLS is used. Then in Paragraph 39, related to Claim 8 of the '142 patent, the FAC does not raise the RFC documents, but repeats the same conclusory sentence used in Paragraphs 17 and 28, that "[o]ne or more private data streams received by the OLTs of least one Defendant, for its subscribers or for the subscribers of another Defendant, have been virtually separated using VRF." *See* FAC, ¶¶ 17, 28, and 39. The FAC fails with respect to all three Asserted Claims for the same reasons.

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

repeat the same formulaic recitation of claim language without referencing any accused component or providing any plausible explanation of why or how AT&T's PON would include such functionality.  For example, Paragraph 16 first states that AT&T "practices the step of" and then quotes claim language.  Paragraph 16 then recharacterizes the claim language and conclusorily states again that AT&T practices this recharacterization.  *See* FAC, ¶ 16.  Although for the purposes of a motion to dismiss "all of the factual allegations in the complaint" are taken as true, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678; *see also Sleep No. Corp. v. Sizewise Rentals, LLC*, No. ED CV 18-00356-AB (SPx), 2018 WL 5263065, at *2 (C.D. Cal. June 26, 2018) ("[I]n patent cases, with regard to a direct infringement claim, a court need not accept as true conclusory legal allegations cast in the form of factual allegations.") (quoting *N. Star Innovations, Inc. v. Etron Tech. Am. Inc.*, No. 16-cv-00599, 2016 WL 9046909, at *3 (C.D. Cal. Sept. 21, 2016)).

The allegations in this case, as illustrated above, are similar to those dismissed in *Teradyne*, where the court held that the plaintiff's quotation and recharacterization of claim language as factual allegations was insufficient to plead a claim of infringement.  *See Teradyne, Inc*, 2020 WL 13593156, at *7.  There, the court held:

> These allegations are: (1) boilerplate in that they generally track the language of the claim limitations themselves without a true factual identification of what aspect of the accused products satisfy each limitation, but also (2) confusing, as they employ certain language that differs from the claim limitations . . . that raises concerns that Teradyne has conflated the claim requirements in its allegations regarding infringement by the accused products.  More is required to support Teradyne's patent infringement claim.

*Id*.  The FAC's infringement allegations perform a similar boilerplate recitation of claim language followed by a confusing re-cast of claim language that conflates claim requirements with the FAC's allegations.  *See* FAC, ¶ 16.  Worse, Paragraph 16's recharacterization of claim language only mentions what a PON ***can*** include and—

DOCUMENT PREPARED ON RECYCLED PAPER

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

without a basis supporting each statement—how that hardware ***may*** function:

> An OLT ***can*** receive private data streams directly from a PON interface router, or indirectly via a network aggregation switch connected between one or more PON interface routers and the OLT. Data streams that include private data streams are sent to an OLT, which creates one or more identical distribution feeds also referred to as common data feeds. The private data streams are intended for specific subscribers.

FAC, ¶ 16 (emphasis added).

Paragraph 16 ends with a conclusion that none of the preceding sentences support, namely that AT&T's "OLTs receive from their associated PON interface routers virtually separated private IP data streams to deliver various services intended for specific subscribers." FAC, ¶ 16. Rather than explain how any equipment or action performed by AT&T meets the claim language, the additional language merely provides SPADA's understanding of the claims, like the complaint in *Teradyne*. Paragraphs 27 and 38 discussing the remaining Asserted Claims are substantively identical to Paragraph 16, with the exception that they track claim language from the '142 patent. *See* FAC, ¶¶ 27, 38. Thus, the FAC's allegations for all Asserted Claims "raise[] concerns that [SPADA] has conflated the claim requirements in its allegations regarding infringement by the accused products. More is required to support [SPADA's] patent infringement claim" and the present complaint should be dismissed. *See Teradyne*, 2020 WL 13593156, at *7.

## B. The FAC Also Fails To State A Claim For Infringement Under The Doctrine Of Equivalents

Without identifying accused products or explaining how AT&T directly infringes, the FAC fails to allege infringement under the doctrine of equivalents for the same reasons its allegations of direct infringement fail.[7] *See* FAC, ¶¶ 49, 52; *see also Anza Tech., Inc. v. Novatel Wireless, Inc.*, No. 3:16-cv-00585-BEN-AGS, 2016

---

[7] Without identifying any accused products, components, or specific conduct, there is no allegation of any "equivalent" method performed by AT&T that might infringe claimed methods under that doctrine.

WL 7555397, at *4, n.6 (S.D. Cal. Nov. 4, 2016) (dismissing complaint with Doctrine of Equivalents infringement claims where "Plaintiff [] failed to sufficiently identify the Accused Products"); *Eagle Pharm. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1175 (Fed. Cir. 2020) (dismissing case at pleadings stage and noting that "[t]he central question for infringement under the doctrine of equivalents is whether 'the accused product or process contain[s] elements identical or equivalent to ***each claimed element of the patented invention***.'") (quoting *Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.*, 520 U.S. 17, 40 (1997)) (emphasis added); *see also Vytacero Bio, LLC v. CytomX Therapeutics, Inc.*, No. 20-333-GBW-CJB, 2023 WL 7125196, at *5 (D. Del. Oct. 30, 2023) (holding that "a plaintiff must plead facts that articulate why it is plausible that a defendant's accused product infringes under the DOE" and collecting cases wherein plaintiffs failed to meet this pleading standard).

The FAC's DoE allegations that "Defendants' accused services perform substantially the same function in substantially the same way to achieve substantially the same result as the claimed invention" repeats the same error as its direct infringement allegations because those paragraphs recite boilerplate language and re-state claim language that conflates claim requirements with factual allegations. FAC, ¶¶ 49, 52.

The FAC's claims of infringement under the doctrine of equivalents should be dismissed.

## C.    The FAC Fails To State A Claim For Willful Infringement

Because the FAC has failed to state a claim for infringement, its willful infringement claim also fails.  "Claims for both willful and induced infringement require an underlying claim of direct infringement.  Because Plaintiff[]fail[s] to plead direct infringement, . . . Plaintiff[] also fail[s] to plead willful and induced infringement." *E-Vision Optics, LLC v. Luxottica Grp. S.p.A.*, No. SA CV 23-02013-AB (SHKX), 2024 WL 1601853, at *5 (C.D. Cal. Mar. 8, 2024) (citing *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012)).

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

1         Setting aside the deficiencies in the FAC's infringement allegations, the FAC

2    also fails to adequately plead willful patent infringement because the patent owner

3    must prove knowledge of the patent ***and knowledge of infringement***.  The FAC has

4    failed to adequately allege such knowledge.  *See Provisur Techs., Inc. v. Weber, Inc.*,

5    No. 2023-1438, 2024 WL 4363502, at *5 (Fed. Cir. Oct. 2, 2024) (reversing district

6    court finding of willful infringement, and noting "[t]here is no dispute Weber knew

7    of the asserted patents.  The issue here is whether Weber knew of its alleged

8    infringement and had a specific intent to infringe.  There is no evidence Weber knew

9    of its alleged infringement.").  "For example, allegations that a patent owner sent a

10    letter merely notifying a third party of the existence of a particular patent, without

11    accusing that third party of infringement, is, by itself, insufficient." *MasterObjects,*

12    *Inc. v. Amazon.com, Inc.*, No. C 20-08103 WHA, 2021 WL 4685306, at *4 (citing

13    *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021)).

14         "Knowledge of the patent alleged to be willfully infringed continues to be a

15    prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341

16    (Fed. Cir. 2016).  "To establish willfulness, the patentee must show the accused

17    infringer had a specific intent to infringe at the time of the challenged conduct."

18    *Bayer Healthcare*, 989 F.3d at 987–88.  "In other words, allegations of an infringer's

19    knowledge of the patent and of infringement must raise a plausible inference that the

20    defendant had the specific intent to infringe.  Allegations of mere direct infringement

21    are insufficient." *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 644 (N.D. Cal.

22    2022).

23         The FAC's allegations of willful infringement are contained entirely within

24    Paragraphs 13 and 47, which alleges:

25        13. On information and belief, Defendants have been aware of the '898
    patent and of the '142 patent since at least May 30, 2024, when SPADA

26        notified AT&T, Inc. – the corporate parent of all the Defendants – of

27        the '898 patent and of the '142 patent in connection with

28        communications between SPADA and AT&T, Inc. in which SPADA

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Document Prepared
on Recycled Paper

offered to license its patents. This notice provided Defendants with knowledge of the patents and the allegation that their AT&T PON-based high-speed Fiber services infringe these patents.

47. On information and belief, Defendants have willfully and deliberately infringed the '898 and '142 patents since at least May 30, 2024. Since that date, Defendants have been aware of these patents and SPADA's assertion that at least one claim of each patent is infringed by Defendants' PON-based high-speed Fiber services provided to subscribers. Despite lacking any basis to refute SPADA's infringement claims, Defendants continue to provide and offer these infringing services.

FAC, ¶ 47. These allegations fail for several reasons.

First, the FAC's unsupported assertion that "AT&T has been aware of" the Asserted Patents since May 30, 2024 is a far cry from sufficient to support a willful infringement allegation. To plausibly plead willful infringement, the FAC must plead that AT&T had knowledge of its *infringement* of those patents. *See E-Vision Optics*, 2024 WL 1601853 at *5 ("The plaintiff must show that the alleged infringer not only knew of the patent but also knew or should have known that its allegedly infringing actions were both patented and infringing.") (citing *Fujitsu*, 620 F.3d at 1321); *see also Entropic Commc'ns, LLC v. Comcast Corp.*, 702 F. Supp. 3d 954, 965 (C.D. Cal. 2023) (dismissing a complaint for failing to allege sufficient facts regarding knowledge of infringement). The FAC does not allege that AT&T had knowledge of any *infringement*.

Second, "[w]hen a patentee relies on a letter to support a willful infringement claim," as the FAC does in Paragraph 13, "'[t]he letter must communicate a charge of infringement of specific patents by a specific product or group of products.'" *See Entropic*, 702 F. Supp. 3d, 965. The FAC did not allege identification of an accused product in pre-suit correspondence. The FAC also did not make any specific allegations about a "letter" or other pre-suit correspondence that might demonstrate knowledge of infringement and accordingly fell shorter of adequate pleading than

Document Prepared on Recycled Paper

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

1    Entropic did in its failed pleading.  *See Entropic*, 702 F. Supp. 3d, 965.

2    Third, assertions that a defendant knew of the Asserted Patents and continued

3    to sell accused products are not sufficient.  "[T]he majority of district courts in the

4    Ninth Circuit have held that 'knowledge and continued infringement alone' are

5    insufficient to support a claim for willful infringement." *Vaporstream, Inc. v. Snap*

6    *Inc.*, No. 2:17-CV-00220-MLH-KSX, 2020 WL 136591, at *20 (C.D. Cal. Jan. 13,

7    2020) (quoting *Universal Elecs. Inc. v. Roku, Inc.*, No. SA CV 18-1580 JVS (ADSx),

8    2019 WL 1877616, at *14 (C.D. Cal. Mar. 5, 2019)); *Document Sec. Sys., Inc. v.*

9    *Lite-On, Inc.*, No. CV 17-06050 JVS (JCGx), 2018 WL 2422589, at *2, 3 (C.D. Cal.

10    Feb. 5, 2018) (collecting cases).  The FAC does not allege that AT&T took any other

11    action beyond continued operations once it allegedly had notice of the existence of

12    the Asserted Patents.  Thus, the FAC's charge of willful infringement falls short

13    because "Plaintiffs have only alleged that Defendants have continued their pre-suit

14    conduct, which allegedly infringes the Asserted Patents.  There is no allegation that

15    Defendants escalated the allegedly infringing behavior in retaliation for being sued,

16    no allegation that Defendants re-dedicated themselves to infringement, and no further

17    allegations shedding light on Defendants' state of mind." *See E-Vision Optics*, 2024

18    WL 3468839 at *5 (dismissing willful infringement claim).

19    Finally, without establishing any pre-suit knowledge of infringement, the

20    original complaint and the FAC do not suffice to establish post-suit knowledge to

21    support a claim for willful infringement.  Courts in this district have held that "a claim

22    of willful infringement, as pled in an original complaint, cannot be grounded in a

23    prediction of defendant's post-suit actions.  After all, a plaintiff cannot yet have a

24    good faith basis for alleging willful infringement based on post-suit conduct that has

25    not yet occurred.  Accordingly, [where a] Plaintiff bases its willful infringement

26    claims solely on Defendant's post-suit knowledge, the Court DISMISSES those

27    claims." *Ravgen, Inc. v. Quest Diagnostics Inc.*, No. 2:21-CV-09011 RGK (GJS),

28    2022 WL 2047613, at *3 (C.D. Cal. Jan. 18, 2022) (internal citations omitted).

DOCUMENT PREPARED
ON RECYCLED PAPER

# V.    **CONCLUSION**

For these reasons, AT&T respectfully requests that the Court grant this motion and dismiss the FAC in its entirety.

Dated:  November 15, 2024         Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

By:  */s/ Brian A. Sun*
        BRIAN A. SUN
        Attorneys for Defendants AT&T
        Communications, LLC n/k/a AT&T
        Ventures, LLC, AT&T Services, Inc.,
        AT&T Mobility LLC, and Pacific Bell
        Telephone Company d/b/a AT&T
        California

Brett C. Govett (*Admitted Pro Hac Vice*)
Vlada A. Wendel (*Admitted Pro Hac Vice*)
**Norton Rose Fulbright US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
brett.govett@nortonrosefulbright.com
vlada.wendel@nortonrosefulbright.com

Daniel S. Leventhal (*Admitted Pro Hac Vice*)
**Norton Rose Fulbright US LLP**
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
daniel.leventhal@nortonrosefulbright.com

Talbot R. Hansum (*Admitted Pro Hac Vice*)
Gabriel S. Culver (*Admitted Pro Hac Vice*)
**Norton Rose Fulbright US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
talbot.hansum@nortonrosefulbright.com
gabriel.culver@nortonrosefulbright.com

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

DOCUMENT PREPARED
ON RECYCLED PAPER

1

### *Certificate of Compliance Pursuant to L.R. 11-6.2*

2    The undersigned, counsel of record for Defendants AT&T Communications,

3  LLC n/k/a AT&T Ventures, LLC, LLC, AT&T Services, Inc., AT&T Mobility LLC,

4  and Pacific Bell Telephone Company d/b/a AT&T California, certifies that this brief

5  contains 6,373 words, which complies with the word limit of L.R. 11-6.1.

6

7   Dated:  November 15, 2024        By: */s/ Talbot R. Hansum*
                                          Talbot R. Hansum

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

DOCUMENT PREPARED
ON RECYCLED PAPER